Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, OR 97301
(503) 917-4409 Phone
(916) 857-6902   Facsimile

Attorneys for Plaintiff
WILLIAM T. WHITE

## UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| WILLIAM T. WHITE,<br><br>                              Plaintiff,<br><br>v.<br><br>PORTLAND PUBLIC SCHOOLS, A Public Body, and DOES 1 THROUGH 50, Inclusive,<br><br>                              Defendants | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR RELIGIOUS DISCRIMINATION AND FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS FOR SINCERELY HELD RELIGIOUS BELIEFS IN VIOLATION OF TITLE VII AND DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff WILLIAM T. WHITE hereby alleges as follows:

### PARTIES

1.      Plaintiff, at all times relevant herein, was a custodian at a school operated by Defendant PORTLAND PUBLIC SCHOOLS ("PPS" or the "District") whose employment was terminated October 15, 2021.

2.      Plaintiff also is, and at all times relevant herein was, a devout Christian who, as permitted under Or. Admin. R. 333-019-1030(3)(a), sought from

1

Defendant PPS a religious exemption from the State of Oregon's requirement that all school employees in the state be vaccinated against COVID-19. The District denied Plaintiff's religious exception request and fired him when he would not abandon his sincerely held religious beliefs by receiving a COVID-19 vaccine.

3.      Defendant PORTLAND PUBLIC SCHOOLS ("PPS" or the "District") is, and at all times herein was, a public school district that operates public schools in the city of Portland, Oregon, and a public body as defined in ORS §§ 30.260(4)(b) and 174.109. PPS furthermore is, and at all times herein was, a "body corporate" that may sue and be sued under ORS 332.072, may buy and sell property, and satisfies any damages obligations owed to tort claimants from its own liability insurance, not from state funds.

4.      The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiff, who therefore sues said Defendants under such fictitious names. Each Defendant designated herein as one of the DOES is legally responsible for the events and happenings herein referred to and proximately caused injuries and damages to Plaintiff thereby, as herein alleged. Plaintiff will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

5.      Plaintiff refers to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

6.      This Court has jurisdiction over Defendant PPS pursuant to 28 U.S.C. § 1331 because Plaintiffs' action arises under the laws of the United States.

## VENUE

7.      Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

8.    Venue is proper in the Court's Portland Division because the events giving rise to this Complaint occurred in the County of Multnomah and all agents, employees, or other persons working for, or in concert with, Defendant PPS with regard to the events giving rise to this case are located in, employed in, and/or residents of the County of Multnomah.

## GENERAL ALLEGATIONS

9.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

10.    In August 2021, roughly 18 months after COVID-19 first arrived in Oregon, the Oregon Health Authority ("OHA"), pursuant to an executive order from Oregon's then-governor, Kate Brown, enacted an administrative rule (the "Vaccine Mandate" or the "Mandate") requiring teachers and school staff to be vaccinated against COVID-19 no later than October 18, 2021.  *See* Or. Admin. R. 333-019-1030.  However, the Vaccine Mandate allowed teachers and school staff to seek, and the school districts that employed them to grant, medical and religious exemptions from the vaccination requirement.  *Id.*, subsections (3)-(4).

11.    The OHA's Mandate also expressly states that "[n]othing in this rule is intended to prohibit schools or school-based programs … from … ***Complying with Title VII of the Civil Rights Act, and state law equivalents***, for individuals ***<u>unable</u>*** to be vaccinated due to … a sincerely held religious belief."  OAR 333-019-1030(5)(a) (emphasis added).

12.    In accordance with the OHA's Mandate, PPS required all of its employees to either be vaccinated against COVID-19 or be granted a religious or medical exception.

13.    Defendant PPS allowed its employees to seek religious exemptions.

14.    Plaintiff is a devout Christian with a sincere belief in following his interpretation of the Bible.

15.    Plaintiff was also a school custodian for 15 years and thus an employee who added value to the District.

16.    When the OHA issued its Vaccine Mandate, Plaintiff became fearful about his job status because he was unable to receive a COVID-19 vaccine for religious reasons: Plaintiff believes, according to his Christian faith, that life begins at conception and that abortion is murder.

17.    On October 5, 2021, Plaintiff submitted a letter to PPS requesting a religious exception from the OHA's Vaccine Mandate.  *See* Attached **Exhibit "A"** [Plaintiff's letter to PPS requesting a religious exemption from receiving a COVID-19 vaccine].  In the letter, Plaintiff explained to the District that he believes the use of cells from aborted babies in the testing and development of vaccines to be "morally repugnant."  *Id.*

18.    Plaintiff also explained to PPS that due to the COVID-19 vaccine manufacturers' use of aborted fetal cells in the testing and development of the vaccines, to receive a COVID-19 vaccine would be to "commit deliberate, premeditated sin," something he refused to do in no uncertain terms.  Ex. "A."

19.    In his letter, Plaintiff cited two passages from the Bible as the basis for his anti-abortion beliefs: Jeremiah 1:5 ["Before I formed thee in the belly I knew there; and before thou camest forth out of the womb I sanctified (thee)"] and Psalms 139:13-16 ["For you created my inmost being; you knit me together in my mother's womb. I praise you because I am fearfully and wonderfully made; your works are wonderful; I know that full well. My frame was not hidden from you when I was made in the secret place. When I was woven together in the depths of the earth"].  Ex. "A."

20.    In response to Plaintiff's letter, PPS submitted to Plaintiff an "informational form" concerning the use of cells from aborted babies in the testing and development of the vaccine.  *See* Attached **Exhibit "B"** [a copy of said form].

This form contained a list of common, over-the-counter medications whose manufacturers used cell lines from aborted fetuses in the cells' development.

21.    Plaintiff did not sign and submit the "informational form" to PPS. Instead, he responded via e-mail, "Now that I am aware of this, I will no longer be using these products because I do not believe in murder or cannibalism.  I will replace them with God's pharmacy, such as willow bark, turmeric, lysine, vitamin c (sic), zinc, peppermint, cinnamon, etc." *See* Attached **Exhibit "C"** [a copy of Plaintiff's e-mail to PPS dated October 11, 2021, concerning his commitment to avoid using pharmaceutical products connected with abortion].

22.    PPS notified Plaintiff on October 15, 2021, that his religious exception request had been denied.  *See* Attached **Exhibit "D"** [a copy of an e-mail from PPS notifying Plaintiff of the denial of his religious exception request].

23.    Because Plaintiff, in accordance with his sincere religious convictions did not receive a COVID-19 vaccine by October 18, 2021, the District placed Plaintiff on unpaid administrative leave on October 18, 2021.

24.    Following the *Loudermill* hearing required for government employees facing termination of their employment, which took place on November 1, 2021, the District fired Plaintiff on December 2, 2021.

25.    Under Title VII, PPS was obligated to provide a reasonable accommodation for Plaintiff's sincerely held religious beliefs unless doing so would require PPS to incur undue hardship.

26.    However, PPS made no good-faith effort to accommodate Plaintiff, even though Plaintiff did inform PPS of his sincerely held religious beliefs and the conflict they presented with regard to his duty to receive a COVID-19 vaccine.

27.    PPS also made no assertion as to why it would suffer undue hardship by accommodating Plaintiff.

28.    The union representing Plaintiff filed a grievance with PPS on Plaintiff's behalf on December 9, 2021, seeking to restore Plaintiff's job.  A hearing took place with Genevieve Rough, PPS' Director of Employee and Labor Relations, concerning Plaintiff's grievance on April 14, 2022.

29.    PPS affirmed its decision to terminate Plaintiff's employment on May 2, 2022, citing just cause.  *See* Attached **Exhibit "E"** [a copy of a letter from the District upholding its decision to terminate Plaintiff's employment].

30.    During the roughly four months after PPS placed Plaintiff on unpaid leave, Plaintiff suffered economic damages totaling $230,196.  Plaintiff's economic damages can be broken down as follows:

   a.   Lost wages: $32,538

   b.   Medical, dental, and vision health insurance benefits: $4,952

   c.   Seventy-four (74) days of retirement credit with Oregon's Public Employees Retirement System ("PERS"): $30,870

   d.   District contribution to PERS account: $1,079

   e.   Social Security: $10,828

   f.   Home purchase ability decline due to cancellation of preapproved home loan in wake of placement on unpaid leave: $50,000

   g.   House inspection cost: $598

   h.   Home appreciation long-term negative impact due to cancellation of pre-approved home purchase: $99,261.

31.    Plaintiff's economic damages have increased significantly in the approximately 16 months since his firing.

32.    As of this writing, Plaintiff has found other employment.

33.    As a prerequisite for filing the herein lawsuit, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  The

EEOC determined that PPS did, in fact, discriminate against Plaintiff in violation of Title VII.  *See* Attached **Exhibit "F"** [a copy of the EEOC's determination letter finding discrimination on the District's part].

34.     Plaintiff has obtained a right-to-sue letter from Oregon's Bureau of Labor & Industries.  That letter is attached hereto as **Exhibit "G."**

35.     Attached hereto as **Exhibit "H"** is a printout from the website TimeandDate.com showing when the 90-day statute of limitations set forth in each right-to-sue letter is set to expire.  Plaintiff has attached this printout hereto as proof that he has timely filed this lawsuit.

## FIRST CAUSE OF ACTION:
### Religious Discrimination in Violation of Title VII – Against PPS
### [42 U.S.C. § 2000e-2]

36.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

37.     Title VII of the 1964 Civil Rights Act prohibits employers from discriminating on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).

38.     For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

39.     Defendant PPS, which reportedly has more than 5,000 employees, is as an employer under Title VII.

40.     The term "religion," for purposes of Title VII, "includes all aspects of religious observance and practice, as well as belief …" 42 U.S.C. § 2000e(j).

41.     As a practicing Christian, Plaintiff belongs to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a)(1).

43.     Plaintiff was qualified for his position as a custodian with Defendant PPS.

44.     Defendant PPS subjected Plaintiff to multiple adverse employment actions: First, by threatening to terminate his employment if he did not receive a COVID-19 vaccine in light of the District's denial of his religious exception request; second, by placing him on unpaid administrative leave; and finally, by terminating his employment.

45.     Defendant PPS treated similarly situated individuals outside Plaintiff's protected class differently than Plaintiff, granting religious exceptions to some employees but not to others without any apparent rhyme or reason as to which employees' beliefs were worthy of accommodation while others were not. At the very least, the fact that PPS granted religious exceptions to some employees and not others gives rise to an inference of discrimination.

46.     Based on the foregoing, Defendant PPS has committed religious discrimination against Plaintiffs in violation of Title VII.

## SECOND CAUSE OF ACTION:
**Failure to Provide Reasonable Accommodations of Sincere Religious Beliefs in Violation of Title VII – Against ASANTE**
**[42 U.S.C. § 2000e-2]**

47.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

48.     Title VII requires employers to provide reasonable accommodations to employees who hold sincere religious convictions that conflict with an employment-related duties if the employers can do so without incurring undue hardship.

49.     Plaintiff holds, and at all times relevant herein held, sincere religious beliefs that render him unable to receive a COVID-19 vaccine.

50.    Plaintiff's sincerely held religious beliefs against taking COVID-19 vaccines conflicted with his employment-related duty to receive a COVID-19 vaccine in accordance with the OHA's Vaccine Mandate.

51.    As required under Title VII, Plaintiff informed his employer, Defendant PPS, of the conflict between his religious beliefs and his employment-related duty to receive a COVID-19 vaccine.

52.    Defendant PPS made no attempt to accommodate Plaintiff's sincere religious beliefs, reasonably or otherwise, even though the District could have provided reasonable accommodations without incurring undue hardship – a fact the EEOC recognized.  See Ex. "E."

53.    Though it could have reasonably accommodated Plaintiff's sincere religious beliefs, Defendant PPS chose instead to subject him to multiple adverse employment actions – threatening to fire him, placing him on unpaid administrative leave, then ultimately firing him.

54.    Based on the foregoing, the Court should hold Defendant PPS liable for failure to accommodate.

### THIRD CAUSE OF ACTION:
**Violation of Constitutionally Protected Freedom of Religion**
**[U.S. Const. amend. I; 42 U.S.C. § 1983]**
**Against Defendants PPS and DOES 1-50**

55.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

56.    Under 42 U.S.C. § 1983, anyone who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

57.    Under 42 U.S.C. § 1983, public bodies like Defendant PPS can be held liable for civil rights violations that arise out of a governmental or proprietary function.

58.    The U.S. Constitution's First Amendment, made applicable to states through the Fourteenth Amendment, prohibits public bodies from infringing on individuals' freedom of religion.  The Fourteenth Amendment prohibits public bodies from "depriv[ing] any person of life, *liberty*, or property without due process of law."  U.S. Const. amend. XIV, § 1 (emphasis added).

59.    Acting under color of state law, Defendant PPS violated Plaintiff's constitutionally protected freedom of religion by effectively penalizing him for adhering to his sincere, religiously-based objection to receiving a COVID-19 vaccine by threatening to fire him, placing him on unpaid leave, and ultimately firing him for not receiving a COVID-19 vaccine.

60.    Even assuming that Defendant PPS had a compelling interest in halting the spread of COVID-19 within its schools, the District could – and should – have reasonably accommodated Plaintiff's beliefs and allowed him to keep working at THS without attempting to publicly shame him.  The District's actions in denying Plaintiff a reasonable accommodation, opting to take adverse employment action instead, were thus not narrowly tailored and therefore cannot survive strict scruinty.

61.    Based on the foregoing, Defendant PPS has deprived Plaintiff of his constitutionally protected freedom of religion, and should be held liable accordingly.  The same goes for all as-of-yet unnamed employees of PPS, identified herein as DOES 1-50, who acted to deprive Plaintiff of his constitutionally protected freedom of religion, as they are not entitled to qualified immunity.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants PPS and DOES 1-50 as follows:

### **ON ALL CAUSES OF ACTION:**

1. For economic damages in an amount according to proof at trial;

2. For non-economic damages in an amount according to proof at trial;

3. For punitive damages in an amount according to proof at trial;

4. For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

5. For such other and further relief as the Court may deem proper.

Dated: April 4, 2023         PACIFIC JUSTICE INSTITUTE

                               __/s/ *RAY D. HACKE*_____
                               Ray D. Hacke
                               Attorneys for Plaintiff
                               WILLIAM T. WHITE

## PROOF OF SERVICE

I am employed in the County of Marion, State of Oregon.  I am over the age of eighteen and not a16 party to the within action; my business address is 1850 45th Ave., Suite 33, Salem, OR 97305.

On or about April 4, 2023, I served the following documents on the interested parties by placing a true copy thereof enclosed in sealed envelope(s) addressed to said parties:

**COMPLAINT FOR DAMAGES FOR RELIGIOUS DISCRIMINATION AND FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS FOR SINCERELY HELD RELIGIOUS BELIEFS IN VIOLATION OF TITLE VII AND DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]**

## PLEASE SEE ATTACHED SERVICE LIST

_____BY MAIL:  I am familiar with the firm's practice of collecting and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. postal service on that same date with postage thereon fully prepaid at Salem, Ore., in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

__X__BY PERSONAL SERVICE:  I caused such envelope to be delivered by hand to the office of the addressee(s).

__X__BY ELECTRONIC MAIL: I caused such documents to be served on the interested parties via electronic mail and through the court's ECF website.

_____(State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__X__(Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 4, 2023, at Salem, Oregon.

/s/ LAUREN PEFFERLE
Lauren Pefferle

## <u>SERVICE LIST</u>

Kate Wilkinson
Assistant General Counsel
Portland Public Schools
501 N. Dixon St.
Portland, OR 97227

# EXHIBIT "A"

I respectfully request a religious exemption from what is referenced as the Covid19 vaccination, under my right of Freedom of Religion, as defined in the US Constitution, Amendment 1.

As a follower of Christ, I know that ALL life is sacred. I am deeply, deeply opposed to the deliberate, premeditated procedure known as "elective abortion." Elective abortions end the life of God's people, of which we all, in our varied paths, are one, beginning at the electrical flash of God's touch at conception, in which the full blueprint of a human being, created in God's Image, is created. Look what is written! Jeremiah 1:5 "Before I formed thee in the belly I knew there; and before thou camest forth out of the womb I sanctified thee... " Psalms 139:13-16 For you created my inmost being; you knit me together in my mother's womb. I praise you because I am fearfully and wonderfully made; your works are wonderful; I know that full well. My frame was not hidden from you when I was made in the secret place. When I was woven together in the depths of the earth. ... " God's Word clearly indicates life begins at conception!

The process of testing and manufacturing the Covid19 vaccination requires the death of an innocent baby, for the word fetus is simply Greek for "baby". The remains of the baby were used in the testing and manufacturing process of the immunization. https://www.nebraskamed.com/COVID/you-asked-we-answered-do-the-covid-19-vaccines-contain-aborted-fetal-cells.   I find this morally repugnant! I will not offend the Living God by turning from Him to commit deliberate, premeditated sin.  I will not absorb this sin into my body.

Mark 9:42 Whoever causes one of these little ones who believe in me to sin, it would be better for him if a great millstone were hung around his neck and he were thrown in the sea, because he is dead to me."

I ask that you grant me a religious exemption. I have many years of experience to benefit the agency in its honorable service to others. I pray God's blessings upon you all.


Respectfully,

William White

# EXHIBIT "B"



**Vaccine Requirement - Religious Exception Mandatory Information**
**Additional Information Form – Fetal Cell Line Information**

Based upon the information you provided in your religious exception request, we wanted to provide additional information regarding how wide-spread the use of fetal cell lines are in the testing and development of many common medicines and consumer products. Please sign below indicating that you have read this information and still wish to request an exception.

The following is a list of common medicines that used fetal cell lines in their development. This is a commonly used and available list of some everyday medicines that, like the COVID-19 vaccine, also used fetal cell lines in their development.

| | | |
|---|---|---|
| Tylenol | Maalox | MMR Vaccine |
| Pepto Bismol | Tylenol Cold & Flu | Albuterol |
| Aspirin | Benadryl | Prilosec OTC |
| Tums | Sudafed | Ex-Lax |
| Lipitor | Senokot | Preparation H |
| Xigris | Acetaminophen | Suphedrine |
| Motrin | Claritin | Azithromycin |
| Ibuprofen | Zoloft | Zocor |

I acknowledge receipt of the information above and wish to seek a religious exception on the grounds described in my request.

Name: _____ Employee ID#_____

Signature: _____ Date _____

**RETURN THIS FORM AND ANY ADDITIONAL PAGES AND/OR DOCUMENTS BY TUESDAY, OCTOBER 12, 2021 TO THIS GOOGLE FORM: https://forms.gle/xJtfk5e9RQeqyGy18**

EEOC Charge No. 551-2022-02064
PPS Exhibit 2
Page 1 of 1

# EXHIBIT "C"



PPS Vaccine <vaccine@pps.net>

## Per the additional information- fetal cell line

**William White** <wwhite1@pps.net>                                    Mon, Oct 11, 2021 at 11:19 AM
To: PPS Vaccine <vaccine@pps.net>

Thank you for the information. Now that I am aware of this, I will no longer be using these products because I do not believe in murder or cananabalism. I will replace them with God's pharmacy, such as willow bark, turmeric, lysine, vitamin c, zinc, peppermint, cinnamon, etc.



**D1C8106A-8CD6-4D19-A766-1F612977F17F.png**
582K

EEOC Charge No. 551-2022-02064
PPS Exhibit 6
Page 1 of 1

# EXHIBIT "D"

**Gena King**

| | |
|---|---|
| **From:** | PPS Vaccine <vaccine@pps.net> |
| **Sent:** | Friday, October 15, 2021 5:02 PM |
| **To:** | William White |
| **Subject:** | Religious Exception Update |

Dear William,

Thank you for providing information in support of your request for a religious exception.  After reviewing the information you have submitted, we are denying your request for a religious exception to the District's COVID-19 vaccine requirement.  Under state law, school districts **may not employ** individuals who are not fully vaccinated with the COVID-19 vaccine after October 18.

**You must become vaccinated** and update the survey to provide the documentation of your vaccination, **or Human Resources will work with your supervisor to begin the process to terminate your employment.**  If you are a represented employee, the process will follow the requirements outlined in your contract.

Since your request was not granted, you can either

1. Get at least one dose of a COVID-19 vaccine and update your survey by Monday, October 18 to continue working, or
2. If you do not provide proof of having gotten at least one dose of a COVID-19 vaccine by Monday, October 18, **you will be placed on an unpaid leave of absence effective Tuesday, October 19, until your termination is processed.**

School districts **may not employ** individuals who are not fully vaccinated with the COVID-19 vaccine after October 18, unless the individual has an approved medical or religious exception.

Unless you get at least one dose of a COVID-19 vaccine and upload proof by **Monday, October 18, then Monday will be your last day at work.**  At the end of your work day, your supervisor will connect with you to collect your badge and keys, laptop or other tech devices.  (If you do not normally work on Mondays, please make alternate arrangements with your supervisor.)

**If you get a COVID-19 vaccine dose by Monday, and update the survey immediately, you will continue to work.** The survey is easy and takes approximately 2-3 minutes and can be completed on a mobile device. If you need technical assistance completing the survey, please contact IT at 503-916-3375. You received your original survey link to you in emails on August 23 and October 6.

For more information on opportunities to be vaccinated, visit the PPS COVID-19 Vaccination website.

Updating the survey is easy and takes approximately 2-3 minutes and can be completed on a mobile device. If you need technical assistance completing the survey, please contact IT at 503-916-3375.If you have additional questions, you may contact vaccine@pps.net.

PPS has a significant and compelling interest in protecting students, employees, and the community from highly contagious and communicable diseases. COVID, including the Delta variant, has resulted in an ongoing pandemic of monumental loss of life, strained the capacity of our health care systems to the point of jeopardizing the healthcare for non-COVID related conditions, closed schools, and generated huge costs (monetary and nonmonetary) and time loss to this and other school districts, among other devastating impacts.

COVID-19 vaccines are effective at helping protect against severe disease and death from variants of the virus that causes COVID-19 currently circulating, including the Delta variant.

EEOC Charge No. 551-2022-02064
PPS Exhibit 22
Page 1 of 2

Thank you,

The Vaccine Team

EEOC Charge No. 551-2022-02064
PPS Exhibit 22
Page 2 of 2

# EXHIBIT "E"



**PORTLAND PUBLIC SCHOOLS**
**Human Resources**
501 N Dixon Street • Portland, OR 97227
503-916-3544 • Fax: 503-916-3107
www.pps.net | facebook.com/pps.homepage

Portland Public Schools is an equal opportunity educator and employer.

May 2, 2022

Matthew Resnick, SEIU local 140 steward

**Re:  Grievance - Just Cause Dismissal, William White**

Mr. Resnick:

This letter is in response to the level 3 grievance that you filed on December 9, 2021, challenging the district's termination of William White's employment based on non-compliance with the COVID-19 Vaccination requirements. The grievance alleges that the District violated the collective bargaining agreement, specifically Article 11 and "all articles that may apply," when they terminated William's employment without Just Cause.

In the settlement of the grievance, the union requested the following remedies:

1.  "Reinstate William's active employment status"
2.  "Make William whole in every way."

We met on April 14, 2022, to discuss the grievance.  Also in attendance were SEIU representative -Sam Davilla, Ray Hacke - attorney, along with Mr. White and Dan Jung, Chief Operating Officer, for the District.

Analysis

Article 11 says, A. No employee shall be disciplined without just cause. Mr. White's employment was terminated not as a disciplinary action, but for his non-compliance with state and District mandated Covid-19 vaccination requirements.  Based upon these state and District mandates, all employees were required to be vaccinated or have an approved exception to continue their employment with the District by October 18, 2021.

Mr. White did not receive an approved exception to the vaccine mandate, making him ineligible for his position. Just cause does not apply in this case. PPS reserves the right to assert that this claim is not subject to arbitration.

Conclusion

For the above reasons, the grievance is denied.

Sincerely,

*G. Rough*

Genevieve Rough, Director, Employee and Labor Relations
Portland Public Schools

Cc:       Dan Jung, Chief Operating Officer
          Frank Leavitt, Director, Facilities and Operations
          William White, grievant
          Ray Hacke, Attorney
          Sam Davilla, SEIU

# EXHIBIT "F"



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Seattle Field Office**

Federal Office Building
909 First Avenue, Suite 400
Seattle, WA  98104-1061
Seattle Direct Dial:  (206) 576-3000
FAX (206) 220-6911
Website:  www.eeoc.gov

Charge No.  551-2022-02064

William T. White
Attn: Ray Hacke
700 SW Eastman Pkwy, Apt E225
Gresham, Oregon 97080                                      Charging Party

Portland Public County School Dist 1J
Attn: Gena King
501 N Dixon St
Portland, Oregon 97227                                      Respondent

<u>DETERMINATION</u>

Under the authority vested in me by the Commission, I issue the following determination as to
the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as
amended.  All requirements for coverage have been met.

Charging Party alleges that he was denied religious accommodation and discharged because of
his religion.

I have considered all the evidence disclosed during the investigation and have determined that
there is reasonable cause to believe that the Charging Party informed Respondent of his sincerely
held religious belief, the conflict it posed with a job requirement, and the need for
accommodation on or about October 5, 2021.  There is also reasonable cause to believe that there
was an accommodation that Respondent could have provided that would not have posed an
undue hardship.  However, Respondent denied the accommodation request on or about October
15, 2021, and discharged the Charging Party on or around December 2, 2021, in violation of
Title VII of the Civil Rights Act of 1964, as amended

Upon finding that there is reason to believe that violations have occurred, the Commission
attempts to eliminate the alleged unlawful practices by informal methods of conciliation.
Therefore, the Commission now invites the parties to join with it in reaching a just resolution of
this matter.

If the Respondent declines to discuss settlement, or when, for any other reason, a settlement
acceptable to the office Director is not obtained, the Director will inform the parties and advise
them of the court enforcement alternatives available to aggrieved persons and the Commission.
Disclosure of information obtained by the Commission during the conciliation process will be
made in accordance with Section 706(b) of Title VII and Section 1601.26 of the Commission's
procedural regulations.  A Commission representative will contact each party in the near future
to begin conciliation.

On Behalf of the Commission

November 16, 2022                    *Elizabeth M. Cannon*

Date                                              Elizabeth M. Cannon
                                                     Director

# EXHIBIT "G"

January 20, 2023



**CHRISTINA E. STEPHENSON**
Labor Commissioner

WILLIAM WHITE
700 SW EASTMAN PKWY
APT E225
GRESHAM, OR 97080

RE:  Complainant:  William White
      Respondent:    Portland Public School District
      Case #:         EEEMRG220120-90335
      EEOC #:        551-2022-02064

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division is now administratively closed because the case has reached its one year anniversary date. This action does not affect either the status of the EEOC investigation or your right to file a federal suit, pursuant to the worksharing agreement between the Equal Employment Opportunities Commission (EEOC) and the Bureau of Labor and Industries. Please call 1-800-669-4000 with inquiries regarding the status of this complaint. Be sure to reference the EEOC charge number if you contact them.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. *Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation</u>.*

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing:** January 20, 2023

Enclosure(s)






# EXHIBIT "H"

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

**Count Days**   **Add Days**   **Workdays**   **Add Workdays**   **Weekday**   **Week №**

From **Friday, January 20, 2023**
Added 90 days

## Result: Thursday, April 20, 2023

### Calendar showing period from January 20, 2023 to April 20, 2023

#### January 2023
11 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

#### February 2023
28 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | | | | |

#### March 2023
31 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

#### April 2023
20 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

☐ = Start date (Jan 20, 2023)   ☐ = Final result date (Apr 20, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.



© Time and Date AS 1995–2023